IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MCCORD PATTEN, | No. C 11-2057 LHK (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; |
| v. | DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT |
| DR. C. STONE, et al., | |
| Defendants. | (Docket Nos. 159, 161, 175, 178, 192) |

Plaintiff, a state prisoner proceeding *pro se*, filed a second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983 against defendants at San Quentin State Prison ("SQSP").  In his SAC, plaintiff alleges that defendants were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment.  Plaintiff has filed two motions for summary judgment.  Defendants have filed a consolidated opposition.  Defendants have also moved for summary judgment.  Plaintiff has filed an opposition to defendants' motion for summary judgment, and defendants have filed a reply.[1]  Having carefully considered the papers submitted, the court GRANTS defendants' motion for summary judgment, and DENIES

---

[1] Defendants' motion for an extension of time to file their reply is GRANTED. Defendants' reply, filed on January 17, 2014, is deemed filed.  Plaintiff's request for judicial notice is GRANTED.  Defendants' request for judicial notice is GRANTED.
   Plaintiff's motion to compel discovery is DENIED.  Plaintiff did not comply with the meet and confer requirements of Civil Local Rule 37-1 or Federal Rule of Civil Procedure 37(a) prior to filing his motion.

1   plaintiff's motions for summary judgment for the reasons set forth below.

2                  **BACKGROUND**

3       The following facts are taken in the light most favorable to plaintiff, and are undisputed

4   unless otherwise indicated.

5       Inmates newly committed to the California Department of Corrections and Rehabilitation

6   ("CDCR") are temporarily housed in reception centers until their permanent housing

7   assignments are arranged, and they are transferred to a mainline institution.  (Kiani Decl. at ¶ 3.)

8   Under the 2007 Dental Policies and Procedures in effect at the time of the challenged events,

9   within 60 calendar days of a new inmate's arrival at a reception center, a dentist must perform a

10   dental screening on that inmate.  (Kushner Decl. at ¶ 5.)  At that screening, the inmate shall also

11   receive: (1) a dental priority classification based on priority of dental need; (2) dental health

12   education; and (3) treatment of emergency or Priority 1A dental conditions.  (Kushner Decl., Ex.

13   1 at 2.2-1.)  While inmates are in reception centers, they are provided limited dental services

14   necessary to meet an inmate's basic needs.  (Kiani Decl. at ¶ 3; Kushner Decl., Ex. 1 at 2.2-3.)

15   Services to reception center inmates are limited to those necessary to meet an inmate's basic

16   needs.  (*Id.*)  Those services include: (1) the treatment of emergency or "Priority 1" urgent care

17   needs such as injuries, acute infection, severe pain, or spontaneous bleeding; (2) treatment for

18   any unusual hard or soft tissue pathology; or (3) individual counseling in oral self-care, if

19   required.  (Kiani Decl. at ¶ 3; Kushner Decl., Ex. 1 at 2.2-3(C).)

20       On August 21, 2008, plaintiff was housed in the reception center at SQSP while awaiting

21   transfer to a mainline institution.  (SAC at 3.)  On August 22, 2008, plaintiff told correctional

22   staff and defendant Dr. Stone that plaintiff had an immediate need for dental treatment because

23   plaintiff had recently been diagnosed with five cavities and had pain.[2]  (*Id.*)  Dr. Stone told

24   plaintiff that he would be scheduled for treatment soon.  (*Id.*)  Under the Dental Policies and

25   Procedures, if an inmate is diagnosed with having tooth decay and has cavities that needed

26

27        [2] Plaintiff states that this occurred on August 21, 2008.  (SAC at 3.)  However, defendant
doctors' notes record the date as August 22, 2008.  This discrepancy is not material to the

28   outcome of these motions.  Based on the recorded notes, the court will use the date of August 22,
2008.

1  filling, the appropriate DPC[3] category is 2.  (Kushner Decl. at ¶ 13, Ex. 1 at 5-4-3.)  On that day,

2  Dr. Stone categorized plaintiff as "DPC 2."  (Doc. No. 161 at 3-4; Kiani Decl., Ex. A at 4.)

3         On September 24, 2008, one of plaintiff's teeth broke on a foreign object in the food.

4  (SAC at 4; Doc. No. 162 ("Pl. Decl.") at ¶ 4.)  Plaintiff told defendant Correctional Officer

5  Upshaw about it, and she merely laughed.  (SAC at 4.)  Plaintiff insisted that he needed dental

6  attention, and Upshaw responded by taking plaintiff's bible from him, tearing it into pieces, and

7  throwing it away.  (*Id.*)  Upshaw would not allow plaintiff to seek dental treatment, and sent

8  plaintiff back to his cell.  (*Id.*; Pl. Decl. at ¶ 5.)  Plaintiff then filed a request for dental treatment

9  via a health services form ("Form 7362"), but it was ignored.  (Pl. Decl. at ¶ 6.)  No one has a

10  record of this request.

11         By October 29, 2008, plaintiff still had not received any response to his request for

12  treatment.  (SAC at 4.)  Plaintiff submitted a 602 administrative appeal.  (Kiani Decl. at ¶ 4;

13  Kushner Decl., Ex. 2.)

14         On November 20, 2008, Dr. Kiani interviewed plaintiff about his dental concerns.  (SAC

15  at 4.)  Plaintiff told Dr. Kiani that he was in pain and had broken teeth.  (Pl. Decl. at ¶ 8.)  Upon

16  examination, Dr. Kiani found no facial swelling, but remarked that plaintiff's tooth decay needed

17  to be further evaluated.  (Kiani Decl. at ¶ 4, Ex. A at 4.)  Dr. Kiani told plaintiff to file another

18  request for health services, and plaintiff would be scheduled for treatment soon.  (SAC at 4;

19  Kiani Decl. at ¶ 6.)  That day, based on Dr. Kiani's evaluation, Dr. Kiani also assigned plaintiff a

20  category of DPC 2.  (Kiani Decl. at ¶ 5.)

21         On November 26, 2008, plaintiff was called in for a dental appointment.  (SAC at 5.)

22  This was a triage appointment to assess and diagnose plaintiff's main complaint, and to provide

23  emergency treatment if needed.  (Kiani Decl. at ¶ 7; Kushner Decl., Ex. 1 at Ch. 5.14-4.)

24

---

25      [3] The DPC is a code assigned by a dentist that indicates the degree of urgency of an

26  inmate's dental needs:
   •     DPC 1A, 1B, 1C = urgent care

27     •     DPC 2 = interceptive case (treatment to be initiated within 120 days)

28     •     DPC 3 = routine rehabilitative care (treatment to be initiated within one year)
(Kushner Decl. at ¶ 8.)

1    Treatment is not generally performed at a triage appointment unless the patient's status is urgent.

2    (Kiani Decl. at ¶ 7.)  Plaintiff received one x-ray and was told to sign some papers.  (SAC at 5.)

3    Plaintiff again told Dr. Kiani that he was in pain and had broken teeth.  (Pl. Decl. at ¶ 8.)  Dr.

4    Kiani did not see any swelling, and the tooth decay appeared to be restorable.  (Kiani Decl. at ¶

5    9.)  After plaintiff signed the papers, plaintiff was told to return to his cell and that he would be

6    scheduled for treatment "soon."  (SAC at 5.)  Plaintiff did not receive any other treatment.  (*Id.*)

7    On that day, Dr. Kiani changed plaintiff's status from DPC 2 to DPC 1C in order to expedite

8    plaintiff's treatment, even though Dr. Kiani still believed that a DPC 2 status was appropriate.

9    (Kiani Decl. at ¶¶ 9, 11-12.)

10          On December 16, 2008, Dr. Kushner responded to plaintiff's administrative appeal at the

11   second level.  (Kushner Decl., Ex. 3.)  Specifically, Dr. Kushner partially granted plaintiff's

12   appeal, but informed plaintiff that filing an administrative grievance was not the proper way to

13   request dental treatment.  (*Id.* at ¶ 21.)

14          On December 21, 2008, plaintiff broke another tooth.  (SAC at 5.)  Correctional staff

15   denied plaintiff access to dental treatment, sending him back to his cell.  (*Id.*)  Plaintiff filed

16   another administrative appeal, and on December 24, 2008, plaintiff was told that his appointment

17   was "soon."  (*Id.*)  By December 25, 2008, plaintiff was in pain and still had not received any

18   dental treatment.  (*Id.*)

19          From August 21, 2008 through April 2, 2009, plaintiff did not receive any dental

20   treatment at SQSP.  (SAC at 6.)  Thereafter, plaintiff was transferred to a mainline institution

21   where plaintiff was provided a comprehensive exam, x-rays, oral hygiene instruction, plaque

22   index test, and individualized treatment plan.  (Pl. Decl., Ex. 1, Ex. A.)  Since then, plaintiff has

23   had five teeth treated, and by February 4, 2010, one tooth remained for restoration and a possible

24   upper partial denture.  (*Id.*)

25                                            **ANALYSIS**

26   A.    Standard of Review

27          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

28   that there is "no genuine issue as to any material fact and that the moving party is entitled to

1    judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect

2    the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

3    as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

4    verdict for the nonmoving party.  *Id.*

5         The party moving for summary judgment bears the initial burden of identifying those

6    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

7    issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

8    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

9    reasonable trier of fact could find other than for the moving party.  But on an issue for which the

10   opposing party will have the burden of proof at trial, as is the case here, the moving party need

11   only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

12   at 325.

13        Once the moving party meets its initial burden, the nonmoving party must go beyond the

14   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

15   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

16   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

17   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is not the task of the court to scour

18   the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th

19   Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity,

20   the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this

21   showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S.

22   at 323.

23        At the summary judgment stage, the court must view the evidence in the light most

24   favorable to the nonmoving party: if evidence produced by the moving party conflicts with

25   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

26   forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

27   1158 (9th Cir. 1999).

28

1

B.    Plaintiff's Claim

2

Liberally construed, plaintiff claims that defendants' failure to provide proper and timely

3

dental treatment from August 21, 2008, through April 2, 2009, caused him harm.[4]  Defendants

4

argue that they are entitled to judgment as a matter of law because the evidence is undisputed

5

that plaintiff was provided constitutionally sufficient dental care; defendants did not exhibit

6

deliberate indifference; and defendants are entitled to qualified immunity.

7

Deliberate indifference to serious medical needs violates the Eighth Amendment's

8

proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104

9

(1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by*

10

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Serious

11

medical needs includes dental care.  *Hunt v. Dental Dep't* , 865 F.2d 198, 200 (9th Cir. 1989)

12

(dental care important medical need of inmates).  A determination of "deliberate indifference"

13

involves an examination of two elements: the seriousness of the prisoner's medical need and the

14

nature of the defendant's response to that need.  *See McGuckin*, 974 F.2d at 1059.

15

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

16

risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

17

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

18

facts from which the inference could be drawn that a substantial risk of serious harm exists," but

19

he "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk,

20

but was not, then the official has not violated the Eighth Amendment, no matter how severe the

21

risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

22

Even assuming that plaintiff had a serious dental need, there is no genuine issue of

23

material fact in dispute about whether defendants exhibited deliberate indifference with regard to

24

plaintiff's dental treatment.

25

26

27

28

[4]  Plaintiff was transferred out of SQSP on April 3, 2009.  (SAC at 6.)  Although plaintiff argues that SQSP defendants are liable for plaintiff having not received dental treatment, i.e., fillings, until July 2009, plaintiff fails to demonstrate how defendants could be liable for plaintiff's dental treatment after he left SQSP.

1        1.      Dr. Stone

2        The record shows that, plaintiff was seen by Dr. Stone one day after plaintiff arrived at

3   SQSP.  (SAC at 3; Kiani Decl., Ex. A at 4.)  Dr. Stone took x-rays of plaintiff's mouth,

4   conducted a screening test, gave plaintiff a self-care pamphlet, and categorized plaintiff's dental

5   priority as DPC 2.  (Kiani Decl., Ex. A at 4.)  Despite plaintiff's insistence that plaintiff needed

6   immediate dental treatment because plaintiff had cavities that were causing him pain, plaintiff

7   has not shown anything more than a difference of opinion between his own belief and Dr.

8   Stone's belief that plaintiff's teeth did not need immediate treatment.  *See Toguchi v. Chung*, 391

9   F.3d 1051, 1058-60 (9th Cir. 2004).

10        In addition, even assuming that Dr. Stone's assessment was incorrect, even liberally

11   construing plaintiff's claim, there is an absence of evidence that Dr. Stone purposely failed to

12   respond to plaintiff's plight.  *See Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has

13   been negligent in diagnosing or treating a medical condition does not state a valid claim of

14   medical mistreatment under the Eighth Amendment. Medical malpractice does not become a

15   constitutional violation merely because the victim is a prisoner.").  In addition, plaintiff's

16   involvement with Dr. Stone was limited to this one interaction.  At most, this was an isolated

17   occurrence of neglect, which does not set forth a viable deliberate indifference claim.  *See Jett v.*

18   *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("an inadvertent [or negligent] failure to provide

19   adequate medical care alone does not state a claim under § 1983.");  *O'Loughlin v. Doe*, 920 F.2d

20   614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to

21   alleviate headaches, nausea and pains is not constitutional violation; it may constitute grounds

22   for medical malpractice but does not rise to level of unnecessary and wanton infliction of pain).

23   Finally, plaintiff makes an unsupported assertion that Dr. Stone was responsible for ensuring that

24   plaintiff receive timely treatment based on Dr. Stone's DPC 2 assignment.  (Pl. Opp. at 19.)

25   Because this assertion is conclusory and not based on personal knowledge, it cannot generate a

26   genuine issue of material fact sufficient to preclude summary judgment.  *See Rodriguez v.*

27   *Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).  Thus, Dr. Stone is entitled to summary

28   judgment.

1         2.    <u>Correctional Officer Upshaw</u>

2       Plaintiff claims that, on September 24, 2008, plaintiff broke one of his teeth.  (SAC at 4.)

3 Plaintiff told Upshaw about it and requested dental attention for the pain and damage.  (*Id.*)

4 Upshaw responded by laughing at him, throwing away plaintiff's bible, and sending plaintiff

5 back to his cell.  (*Id.*)  Later that day, plaintiff submitted a Form 7362 request for health services,

6 but it was never addressed.  (*Id.*)  Upshaw claims that she does not remember any of these

7 events.  (Upshaw Decl.)

8       Although plaintiff asserts that Upshaw prevented plaintiff from seeking dental treatment

9 (SAC at 7), plaintiff goes on to admit that he was able to submit and did submit a Form 7362

10 request for health services that very same day.  (SAC at 4.)  There is no indication that Upshaw

11 interfered with plaintiff's submission of his Form 7362 request for health services, or that

12 Upshaw was responsible for plaintiff not receiving any response after he submitted the request.

13 In sum, there is an absence of evidence that Upshaw was the proximate cause of plaintiff's

14 failure to receive dental treatment.  *See Lemire v. California Dep't. of Corrections &*

15 *Rehabilitation*, 726 F.3d 1062 at 1068 (9th Cir. 2013).

16       Moreover, plaintiff has failed to show that Upshaw's actions resulted in harm.

17 *McGuckin*, 974 F.2d at 1060; *Hunt*, 865 F.2d at 200 ("delay in providing a prisoner with dental

18 treatment, standing alone, does not constitute an Eighth Amendment violation").  In addition,

19 plaintiff has offered no evidence to demonstrate that his broken tooth was so severe that a delay

20 in treatment caused him significant harm, and that, at the time, Upshaw knew that plaintiff faced

21 such harm yet disregarded it.  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir.

22 2002); *cf. Hunt*, 865 F.2d at 200 (holding that summary judgment was inappropriate where

23 plaintiff alleged that prison officials were aware of his bleeding gums, breaking teeth and

24 inability to eat properly due to the loss of his dentures, yet failed to take any action to relieve his

25 pain or to prescribe soft food diet).  Finally, in light of the brief interaction between Upshaw and

26 plaintiff, and the fact that plaintiff was able to submit a Form 7362 request for health services

27 that same day, despite Upshaw's rude behavior, it appears that her action was an isolated

28 occurrence, which is insufficient to find that she was deliberately indifferent.  *See McGuckin*,

974 F.2d at 1060-61 (comparing an isolated exception to cases in which the facts show that "defendant repeatedly failed to treat an inmate properly or that a single failure was egregious"). Accordingly, there is no genuine dispute of material fact, and Upshaw is entitled to summary judgment.

3.   Dr. Kiani

On November 20, 2008, Dr. Kiani interviewed, evaluated, and diagnosed plaintiff dental's situation. (Pl. Opp. at 19.) Dr. Kiani determined that plaintiff was still a category DPC 2. (Id.) Dr. Kiani observed that plaintiff demonstrated no facial swelling, but plaintiff's tooth decay needed to be further evaluated. (Kiani Decl. at ¶ 4, Ex. A at 4.) Dr. Kiani told plaintiff to file another Form 7362 request for health services, and plaintiff would be scheduled for treatment soon. (SAC at 4; Kiani Decl. at ¶ 6.) After plaintiff submitted such a request, plaintiff was scheduled for a triage dental appointment on November 26, 2008. (Kiani Decl. at ¶ 7.)

On November 26, 2008, plaintiff went to his triage appointment and received one x-ray. (SAC at 5.) Plaintiff told Dr. Kiani that he was in pain and had broken teeth. (Pl. Decl. at ¶ 8.) Dr. Kiani did not see any swelling, there was no demonstrable pain upon vertical pressure, and the tooth decay appeared to be restorable. (Kiani Decl. at ¶ 9, Ex. A at 4.) Afterward, plaintiff was told to return to his cell and he would be scheduled for treatment "soon." (SAC at 5.) Dr. Kiani believed that plaintiff's condition did not warrant emergency treatment and, because plaintiff's triage appointment limited treatment to emergency or urgent conditions only, Dr. Kiani did not immediately attend to plaintiff's needs. (Kiani Decl. at ¶¶ 7-9, 11.) Nonetheless, Dr. Kiani changed plaintiff's status from DPC 2 to DPC 1C in order to expedite plaintiff's treatment, even though Dr. Kiani believed that a DPC 2 status was still appropriate. (Kiani Decl. at ¶¶ 9, 11-12.) Though plaintiff disagrees with Dr. Kiani's reasons for changing plaintiff's category from DPC 2 to DPC 1C (Pl. Opp. at 21-22), plaintiff's opinion is based on nothing more than speculation.

Plaintiff goes on to say that Dr. Kiani was responsible for expediting plaintiff's treatment and failed to do so. (Id. at 22.) However, Dr. Kiani disputes that he had anything to do with why plaintiff was not treated within the 60 day period designated for a DPC 1C. (Kiani Decl. at

1  ¶ 13.)  According to the Dental Policies and Procedures, inmates designated as DPC 2 are to

2  receive treatment within 120 days of triage.  (Kushner Decl., Ex. 1 at 5.4-3.)  Inmates designated

3  as DPC 1C are to receive treatment within 60 days of triage.  (*Id.*)

4      Plaintiff complains that he was not treated within the time frames assigned by the Dental

5  Policies and Procedures.[5]  Nonetheless, that prison officials violate their own procedures does

6  not automatically equate to a finding that they also violated the federal constitution.  The

7  question here is whether there is a genuine issue of material fact that Dr. Kiani's failure to act

8  delayed plaintiff's treatment, and whether that failure to act was deliberately indifferent.

9      The Dental Policies and Procedures states that at the end of each appointment, the dentist

10  shall ask the inmate if he would like to initiate another request for dental services by filling out a

11  Form 7362 request for health services.  (Kushner Decl., Ex. 1 at 5.3-2.)  If the inmate so

12  requests, the inmate shall fill out a request form at the end of the dental appointment, and the

13  dentist or designee shall schedule the inmate for the next available appointment depending on the

14  inmate's designated priority categorization, i.e., DPC 1 or DPC 2.  (*Id.*)  Here, there is no

15  indication that after plaintiff's triage appointment on November 26, 2008, Dr. Kiani asked

16  plaintiff whether plaintiff would like to schedule another appointment by filling out a Form 7362

17  request for health services.  Further, there is no indication that plaintiff filled out a Form 7362

18  request for health services to schedule an appointment.

19      According to defendants, an office technician was responsible for scheduling inmates'

20  follow-up dental appointments.  (Kushner Decl. at ¶ 19.)  In 2008-2009, dental appointments

21  were not scheduled more than three days in advance.  (*Id.* at ¶ 23.)  If an inmate required further

22  

23      [5]  Defendants argue that plaintiff was not eligible for treatment of his cavities, and other

24  ailments as a DPC 2, while he was housed at the reception center.  (Defs.' MSJ at 10-11.)
Defendants base this argument on the Dental Policies and Procedures 2.2(III)(C)(1), which sets

25  forth a non-exhaustive list of the limited dental services necessary and available at the reception
center to meet an inmate's basic needs.  (Kushner Decl., Ex. 1 at 2.2-3.)  However, contrary to

26  defendants' assertion, Dental Policies and Procedures 2.2(III)(C)(1) does not preclude other
dental treatments not specifically listed.  Further, the Dental Policies and Procedures specifically

27  lays out deadlines as to when treatment for each DPC should occur.  (*Id.*, Ex. 1 at 5.4-3.)  There
is nothing in the record to suggest that those deadlines are inapplicable merely because an inmate

28  is housed at a reception center.

1    treatment, his Form 7362 request for health services was filed with other inmates' forms, and the

2    office technician would prioritize scheduling the treatments based on the inmate's DPC and

3    eligibility to receive such treatment.  (*Id.*; Kushner Decl., Ex. 1 at 5.3-1, 5.3-2.)

4        Based on the evidence, despite plaintiff's insistence, there is an absence of evidence that

5    Dr. Kiani was responsible for the delay in scheduling plaintiff's next appointment for treatment.

6    *See McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992) (finding that there was an absence

7    of evidence demonstrating that defendant doctors caused the delay of treatment, noting that

8    "there is nothing in the record to demonstrate that either was responsible for the scheduling of

9    such diagnostic examinations or that either in any way hindered its performance").  At most, Dr.

10   Kiani was negligent in failing to ask if plaintiff would like to schedule another appointment after

11   November 26, 2008.  Negligence is insufficient to establish an Eighth Amendment violation.

12   *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004); *see, e.g.*, *Butler v. Jong Yeoung*

13   *Moon*, 2011 WL 1103123, *3 (E.D. Cal. 2011) (dismissing claim against doctor for failing to

14   schedule follow-up appointment because plaintiff failed to show that doctor "deliberately or

15   callously chose not to schedule a medical appointment for plaintiff knowing that doing so would

16   expose plaintiff to an excessive risk of harm"); *Marcotte v. Monroe Corrections Complex*, 394 F.

17   Supp. 2d 1289, 1296 (W.D. Wash. 2005) (disagreement over whether plaintiff or defendant was

18   responsible for scheduling follow-up medical appointment does not raise factual dispute as to

19   defendant's state of mind in section 1983 claim for deliberate indifference under Eighth

20   Amendment).  After plaintiff saw Dr. Kiani on November 26, 2008, there is no indication that

21   Dr. Kiani had any knowledge that plaintiff was in pain or that plaintiff broke any additional

22   teeth.  Importantly, there is an absence of evidence that plaintiff submitted any further request

23   for health care services to schedule any dental appointments.

24       Based on the evidence in the record, Dr. Kiani is entitled to summary judgment.

25       4.   Dr. Kushner and Dr. Walker

26       Plaintiff claims that Dr. Kushner reviewed plaintiff's administrative appeal at the second

27   level and responded on December 16, 2008.  (Kushner Decl., Ex. 3.)  At the time plaintiff was

28   housed at SQSP, Dr. Kushner was the Chief Dentist at SQSP.  (*Id.* at ¶ 1.)  In the second level

appeal response, Dr. Kushner noted that plaintiff was improperly using the administrative appeal process in an attempt to schedule dental appointments, and recognized that plaintiff had, in fact, received a triage appointment with Dr. Kiani on November 26, 2008.  (*Id.* at ¶ 21.)  No where in plaintiff's administrative appeal did plaintiff complain to Dr. Kushner that he was in pain.  (*Id.*, Ex. 2.)  Plaintiff does not refute that Dr. Kushner did not personally provide plaintiff dental treatment.

Similarly, with respect to Dr. Walker, plaintiff claims that plaintiff submitted his administrative appeal at the director's level of review on November 25, 2008.  (Hrvatin Decl., Ex. 2.)  On February 4, 2010, Dr. Walker responded that, as of April 10, 2009, plaintiff had already received treatment to five teeth and there was one tooth remaining for restoration with an upper partial denture to be scheduled for fabrication should plaintiff be eligible for the service.  (*Id.*)  By the time Dr. Walker completed his investigation, plaintiff had already received treatment at the mainline institution.  (*Id.*)  There is no evidence that Dr. Walker had any other interaction with plaintiff outside of the response to plaintiff's administrative appeal.  Moreover, plaintiff has not submitted any evidence in which Dr. Walker can be inferred to have been deliberately indifferent to plaintiff's dental needs.

Supervisors may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For the reasons discussed above, there is no genuine issue of material fact that Dr. Kiani and Dr. Stone, the subordinates of Dr. Kushner and Dr. Walker, were deliberately indifferent to plaintiff's dental needs.  In the absence of any constitutional violation by their subordinates, they cannot be held liable as supervisors.  Moreover, there is an absence of evidence that Dr. Kushner and Dr. Walker knew that plaintiff faced a substantial risk of serious harm and disregarded that

1   risk by failing to take reasonable steps to abate it.  *Farmer*, 511 U.S. at 837.

2           Accordingly, Dr. Kushner and Dr. Walker are entitled to summary judgment.

3                                    **CONCLUSION**

4           Accordingly, defendants' motion for summary judgment is GRANTED.[6]  Plaintiff's

5   motions for summary judgment are DENIED.  The clerk shall terminate all pending motions and

6   close the file.

7           IT IS SO ORDERED.

8   DATED: _____3/3/14_____                    _Lucy H. Koh_____
                                                LUCY H. KOH

9                                               United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          [6] Because the court is granting defendants' motion for summary judgment on the merits,
28   the court declines discussing defendants' argument that they are also entitled to qualified
     immunity.

Order Granting Defendant's Motion for Summary Judgment; Denying Plaintiff's Motions for Summary Judgment
P:\PRO-SE\LHK\CR.11\Patten057msj.wpd          13